# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SONAS MEDICAL SUPPLY, INC., § § § *Plaintiff,* § § v. § § XAVIER BECERRA, Secretary of the § United States Department of Health and § Human Services § § *Defendant.* § | Civil Action No. 4:21-CV-529 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss Amended Complaint (Dkt. #21). Having considered the motion, the relevant pleadings, and the applicable law, the Court finds that the motion should be **GRANTED.**

## BACKGROUND

This case arises out of an alleged Medicare overpayment and the subsequent administrative review that concluded sooner than expected due to a missed deadline. Plaintiff Sonas Medical Supply, Inc. ("Sonas") is seeking to appeal and overturn a final agency decision that was issued during Sonas' effort to show that the finding of an overpayment was erroneous. The final agency decision concerns the denial of a hearing from an Administrative Law Judge ("ALJ") because Sonas' request was considered untimely. Defendant Xavier Becerra ("Becerra"), Secretary of the United States Department of Health and Human Services ("HHS"), opposes this lawsuit, stating that the Court lacks authority to grant Sonas' requested relief because both the ALJ and Medicare Appeals Council ("MAC") in this case followed the relevant statutes and regulations under the Medicare Act in concluding that Sonas' request of the ALJ hearing was untimely.

When a medical supplier, like Sonas, wishes to challenge Medicare recoupment, there is a five-phase review process under the Medicare Act that the supplier can choose to pursue according to the relevant statutes and regulations.[1]  *See Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 526 (5th Cir. 2020).  The five phases include the following requests for review: (1) a redetermination from an HHS contractor; (2) a redetermination from a qualified independent contractor ("QIC"); (3) a hearing and de novo review from an ALJ; (3) an appeal to the MAC; and finally, (5) judicial review in a federal court.  *See id.* at 525–27; *Fam. Rehab., Inc. v. Azar*, 886 F.3d 496, 499–501 (5th Cir. 2018).  Sonas' claim reaches the Court on a procedural issue, as Sonas missed a deadline prescribed in the regulations and is now seeking the Court to allow the ALJ to hear its claim.

## I. The Reimbursement Denial & Overpayment Finding (Phases One and Two)

Sonas is a Texas corporation that provides "durable medical equipment prosthetics, orthotics, and supplies" (Dkt. #17 ¶ 9).  Sonas is a participant in the Medicare program as a medical supplier, meaning that it works with various Medicare contractors to receive reimbursements for the medical equipment that it provides.  Sonas' role in the Medicare program entitles it to participate in the appeals process when a problem arises.  *See generally* 42 U.S.C. § 1395ff.  Sonas utilized this review process after it filed a claim of reimbursement that was ultimately denied.  The reimbursement at issue covers various claims over the period of May 1, 2012, to July 20, 2015.

Sonas submitted its relevant reimbursement to AdvanceMed, a Zone Program Integrity Contractor (the "ZPIC"), who reviewed Sonas' claims.  On November 10, 2016, the ZPIC denied all of Sonas' claims, stating that Sonas was not entitled to a reimbursement and notified Sonas of an overpayment of $1,339,239.44.  In the denial letter, ZPIC provided Sonas with summary explanations for the denial of each claim and Sonas alleges that it lacked the specific statistical

---

[1] Medicare recoupment is "the recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness."  42 C.F.R. § 405.370.

sampling and extrapolation methodology" that was used to calculate the alleged overpayment (Dkt. #17 ¶ 16).

On November 16, 2016, another Medicare contractor, CGS, issued a formal demand letter to Sonas for the alleged overpayment and informed Sonas of its right to appeal. This appellate process includes the above-mentioned five-phase scheme, pursuant to the Medicare statutes and regulations. The first phase is requesting a redetermination review from an HHS contractor, just like the one who sent the initial demand letter. Sonas requested a redetermination review. And on February 17, 2017, CGS rendered an unfavorable reconsideration decision to Sonas. Sonas then proceeded with the second phase by requesting a review by a QIC. On August 7, 2017, Sonas received yet another unfavorable reconsideration decision (the "Final Reconsideration Decision"). In the Final Reconsideration Decision, Sonas was informed about its right to request an ALJ hearing within sixty (60) days, the third phase in the administrative review process.

On January 22, 2018, Sonas was sent the specific calculations that were used in the original denial that the ZPIC issued alleging overpayment (the "Specific Calculation Notice"). This Specific Calculation Notice did not include any information regarding Sonas' right to appeal, meaning no explicit language was included that its timeline to appeal was extended. The parties now dispute what Sonas' proper appeal deadline was: sixty days from the Final Reconsideration Decision or sixty days from the Specific Calculation Notice.

II.   **The ALJ & MAC Proceedings (Phases Three and Four)**

Sonas continued filing for a review in this administrative process and requested a hearing with an ALJ. Becerra received and filed the request on April 2, 2018. This date falls after the sixty-day deadline, regardless of whether the applicable deadline was sixty days after the Final Reconsideration Decision or the Specific Calculation Notice.

On September 30, 2020, the ALJ dismissed Sonas' request as untimely. The dismissal stated that Sonas did not provide any reason for its untimely filing and that there was no indication of any limitation that prevented Sonas from understanding the need to file a timely request. Sonas received notice of the dismissal "on or about October 8, 2020" (Dkt. #17 ¶ 6).

Sonas alleges that the reason that it did not file its appeal on time is due to "excusable neglect" (Dkt. #17 ¶ 24). Specifically, Sonas' former counsel drafted a cover letter and request on March 7, 2020, and it was intended to be mailed on that day. However, neither the cover letter nor request were actually mailed until the end of the month. While Sonas does not deny that the request was filed after the deadline, the applicable deadline is relevant to back up Sonas' claim that the request and letter were received "only a few days after the deadline had expired" (Dkt. #17 ¶ 25).

On December 4, 2020, Sonas exercised the fourth phase of the review process and requested a review of the ALJ's decision by the MAC. In the appeal, Sonas argued the ALJ erred in dismissing its action because there was excusable neglect, "which should fall under the category of good cause under 42 C.F.R. § 405.492(b)(3)" and that the Final Reconsideration Decision without the overpayment amount did not meet the jurisdictional threshold for ALJ review (Dkt. #17, Exhibit 1 at p. 5). On May 13, 2021, the MAC issued a decision denying Sonas' request, stating that the initial filing was untimely and there was no basis to extend the ALJ filing deadline. Additionally, the MAC concluded that Sonas' argument that the Final Reconsideration Decision was not a final decision is without merit. Rather, in the applicable regulations, MAC found that the sixty-day deadline should be from the date a party receives a reconsideration decision from a QIC (Dkt. #17, Exhibit 1 at p. 5). According to the MAC's decision, that would be the Final Reconsideration Decision. Following MAC's decision, Sonas had sixty days from the date of

receipt to file for judicial review pursuant to 42 C.F.R. § 405.1130, the fifth and final review phase in the Medicare administrative process.

### III.     Procedural History (Phase Five)

On July 9, 2021, Sonas filed the above-captioned lawsuit against Becerra (Dkt. #1). According to the applicable regulations, Sonas' filing to the Court was made in a timely manner. On February 22, 2022, Sonas filed its First Amended Complaint, requesting for the Court to intervene and allow the HHS to accept its claim challenging the overpayment. Sonas alleges numerous claims against Becerra, however, each claim stems from the arguments that the MAC erred by failing to consider Sonas' excusable neglect and that the HHS violated its constitutional rights by failing to include the specific calculations in his initial denial and has deprived it of an effective means to challenge the alleged overpayment.

On April 21, 2022, Becerra filed the pending motion under Federal Rule of Civil Procedure 12(b)(6) as to all claims, alleging that Sonas has failed to state a valid claim upon which relief could be granted (Dkt. #21). On June 6, 2022, Sonas filed a response, stating that it has filed plausible claims (Dkt. #24). On July 22, 2022, Becerra filed a reply (Dkt. #27).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff.

*Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

**ANALYSIS**

Becerra has alleged that Sonas failed to state a claim under any of the counts listed. Sonas has three principal arguments in response. First, Sonas argues that the Court should excuse its late filing under the "excusable neglect" doctrine that stems from the *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd.*, 507 U.S. 380 (1993) case and apply it to the Medicare Act under "good cause." Second, Sonas argues that it has a right to an ALJ hearing on the merits, rather than it being thrown out simply for procedural reasons. Finally, Sonas argues that Rule 6 of the Federal Rules of Civil Procedure applies in this case and that the Court should find good cause "in the interest of justice." The Court will address each argument in turn.

**I.     Excusable Neglect**

The agency's decision is subject to judicial review, as Sonas properly filed the lawsuit with the Court in the available window. 42 C.F.R. § 405.1130. However, Sonas' argument essentially asks the Court to consider a standard that is not present in any of the rules that applies to the HHS or its administrative proceedings. Sonas wants the Court to take a standard that it uses under the Federal Rules of Civil Procedure to excuse certain late filings in federal court and apply it to the Medicare administrative process, which is an entirely different setting. *See* FED. R. CIV. P. 60. It is the Court's understanding that this has never been done by any other court. The Court finds that it does not have the proper authority to fulfill Sonas' request based on the relevant statutes and regulations.

Under the Medicare Act, it states that: "The Secretary shall promulgate regulations and make initial determinations with respect to benefits . . . in accordance with those regulations." 42 U.S.C. § 1395ff(a)(1). In those regulations, it states that a party has a right to a hearing before an ALJ based on a QIC reconsideration so long as the party "files a written request for an ALJ hearing within 60 calendar days after receipt of the notice of the QIC's reconsideration." 42 C.F.R.

§ 405.1002(a)(1). To calculate the proper date, the regulations also clarify that "receipt of the notice" is "presumed to be 5 calendar days after the date of the reconsideration, unless there is evidence to the contrary." 42 C.F.R. § 405.1002(a)(3). Additionally, the request is considered as filed on the date it is received by the office specific in the QIC's reconsideration. 42 C.F.R. § 405.1002(a)(4). It is an uncontested fact that Sonas did not file its request within the proper deadline as described in the regulations. However, there are rules that govern these types of situations as well. A party may request an extension of time to request having an ALJ hearing, however, the extensions must "be in writing and give the reasons why the request is filed untimely." 42 C.F.R. § 1014(e)(1), (e)(3). Based on this, the ALJ may extend the deadline "for good cause." 42 C.F.R. § 405.1014(e)(3). The regulations also provide some guidance in how good cause is intended to be applied. *See* 42 C.F.R. § 405.942(2), (3) (describing the circumstances that should be considered and a non-exhaustive list of examples). The term excusable neglect is not used *anywhere* in the Medicare Act or its regulations.

Sonas cites a number of cases where the excusable neglect standard has been applied by courts when conducting a review of an agency action. However, these cases are inapplicable in this scenario because those cases were reviewing rules that explicitly or implicitly required an analysis into excusable neglect. Neither situation is implicated with Sonas' case.

The Court views the relevant case law that applies the excusable neglect standard on this issue in two different groups. First, there are the cases that apply an agency's specific rule or regulation that uses the term excusable neglect. Second, there are the cases where the court is forced to apply the excusable neglect standard because the rules explicitly state that the agency is subject to the same standards as allowed by the Federal Rules of Civil Procedure when there is no

8

applicable rule.  The Court will discuss each of these groups of case law in turn and why neither situation is raised in Sonas' case.

The first group of cases that Sonas cites in its briefing are cases that review a statute or regulation that allows for an entity to consider excusable neglect as a reason for a late filing.  The pinnacle case that supports this position is the Supreme Court's decision in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380 (1993).  In *Pioneer*, the dispute involved the interpretation of a preexisting bankruptcy rule—Rule 9006—which stated that a party may be excused from a late filing if there was a finding of excusable neglect.  *Id.* at 382.  The Supreme Court ultimately resolved the discrepancy, finding that the term excusable neglect in the bankruptcy code is an "elastic concept," where things outside the control of the movant may be considered.  *Id.* at 392.  This interpretation has then been applied to other statutes and rules where the same excusable neglect language was used.  *See e.g.*, *Theriot v. Bldg. Trades United Pension Tr. Fund*, No. 18-10250, 2022 WL 2191668, at *2 (applying the same standard to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure that uses the term excusable neglect).  The *Pioneer* case does not stand for the proposition that the excusable neglect standard can be applied to every agency's decision.  Nor does it back up the claim that it should be included in the term of good cause.

The Supreme Court inherently discusses that there are different standards that may be present in a rule concerning late filings, and each is given a different interpretation.  *Id.* at 389 (discussing how excusable neglect is only allowed for late filings in Chapter 11 cases, whereas other standards are used for Chapter 7 cases, such as "in the interest of justice" under Rule 3002, which makes sense given the "differing policies of the two chapters").  The Court also reads the Supreme Court's discussion about the difference between the "excusable neglect" and "extraordinary circumstances" portions of Federal Rule of Civil Procedure 60 to mean that when

9

a different term is used to explain a standard for excusable conduct for a failure to file, a different definition must be given. *Id.* at 393 (discussing that the provisions with different standards in Rule 60(b)(1) and 60(b)(6) are "mutually exclusive," and as for extraordinary circumstances, the party must be faultless for the delay). This is consistent with the canons of construction and the rule that when Congress uses different terms, each term should have a particular meaning so that a court may not change the words of a statute or rule on its own. *See Silva-Trevino v. Holder*, 742 F.3d 197, 203 (5th Cir. 2014) ("It is an elementary canon of construction that when Congress uses different terms, 'each term [is] to have a particular, nonsuperfluous meaning.'"). The Court finds that this applies in this case with the difference in standards for excusable neglect and good cause. *See United States v. Hernandez*, No. 3:08-CR-268 (01), 2017 WL 2414924, at *1 (N.D. Tex. May 12, 2017) ("The good cause and excusable neglect standards have 'different domains.' They are not interchangeable, and one is not inclusive of the other.")

The Fifth Circuit cases cited by Sonas—*Clark*, *Moczek*, *Nelson*, and *In re CJ Holding*—all stand for the same principal as *Pioneer*, as the Fifth Circuit was merely interpreting a rule that explicitly allows "excusable neglect" as a proper way to excuse a late filing, just in different contexts. *United States v. Clark*, 51 F.3d 42, 43 (5th Cir. 1995) (applying excusable neglect standard to Federal Rule of Appellate Procedure 4(b) in the criminal context because the term is used); *Moczek v. Secretary of Health and Human Services*, 776 F. App'x 671, 673 (Fed. Cir. 2019) (applying excusable neglect standard to Rule 60(b) of the Rules of the Court of Federal Claims because the term is used); *L.A. Public Ins. Adjusters, Inc. v. Nelson*, 17 F. 4th 521, 524 (5th Cir. 2021) (applying standard under Rule 6(b)(1)(B)); *see also In re CJ Holding Co.*, 27 F. 4th 1105, 1112 (5th Cir. 2022) (applying excusable neglect standard in bankruptcy action like in *Pioneer*). Sonas argues that the Federal Circuit applied Rule 60(b) to the Department of Health Services

10

previously in the *Moczek* case, but that case is distinguishable to this one. In *Moczek*, the relevant judgment that was issued came from a United States Court of Federal Claims. Therefore, the guiding rules in that case was the Rules of the Court of Federal Claims. *See Moczek,* 776 F. App'x at 673. Here, the relevant "judgment" was issued by the MAC, who acts as a type of appellate court in the Medicare process. The relevant rules and regulations that the MAC are bound by are completely different than the Federal Rules of Civil Procedure or Federal Claims. Therefore, *Moczek* does not apply in this case. Additionally, the Federal Rules of Civil Procedure that concern an "excusable neglect" standard do not apply in this case. Those situations are for when a court must decide if the late filing—that was made in its own proceedings—should be allowed, and here, the Court is simply reviewing whether the MAC properly disallowed a late filing. Therefore, the Court must review the MAC's applicable rules, as it already has, and found that the MAC and ALJ for Sonas' case are only allowed to excuse a late filing if there is a finding of good cause. Because the term excusable neglect is not found in any of the rules, *Pioneer* and its progeny will not apply to Sonas' claim.

The second line of cases arise when there are no set standards, such as "excusable neglect," "good cause," or "extraordinary circumstances" that are enumerated in the language of the rule where a late filing can be excused. The rules may have a catch-all phrase, stating that the Federal Rules of Civil Procedure apply when the rule is not expressly prohibited by another rule. *See Coleman Hammons Constr. Co. v. Occupational Safety and Health Rev. Comn.*, 942 F.3d 279, 281 (5th Cir. 2019) (citing 29 U.S.C. § 661(g) which states that the Commission's proceedings in accordance with the Federal Rules of Civil Procedure unless the Commission has adopted a different rule). This is the case with the Fifth Circuit's *D.R.T.G. Builders* case and other OSHA

related cases that Sonas cites in their briefing. *D.R.T.G. Builders, L.L.C. v. Occupational Safety and Health Rev. Commn.*, 26 F.4th 306, 310–12 (5th Cir. 2022).

Here, there is no catch-all phrase where the Federal Rule of Civil Procedures are invoked if there is no other guiding rule. However, even if there was, the Federal Rules of Civil Procedure would not apply because of addition of the "good cause" standard as a measure to determine if a late filing will be excused. The Court's proper role in this case is to decide whether the MAC properly denied Sonas' claim after considering the applicable standards to explain the late filing. In this case, that would be good cause, and not excusable neglect. Therefore, the second group of cases that Sonas mentions in its briefing also do not apply.

## II. The Right to an ALJ Hearing

Sonas second argument suffers from the same detriment as its first argument. Sonas states that Becerra's remaining arguments that "Medicare acted within its guidelines and limitations" rests upon the idea that "excusable neglect was not applicable," and the Court agrees (Dkt. #24 at p. 6).[2] However, the Court reiterates that the excusable neglect standard was not an appropriate standard that can be applied to this case.

In reviewing the agency's prior decision, the Court ultimately finds that the MAC properly exercised its discretion in finding there was no good cause. Sonas states that its reasoning for the late filing was simply a failure of its prior counsel. The guiding regulations that are present in

---

[2] The only contention that Sonas makes that would not be properly classified with its excusable neglect argument is that the agency violated "the statutory limitation on recoupment" because there was a premature recoupment in this case (Dkt. #17 at p. 13). However, the Court easily disposes of the argument, as the Medicare regulations and Fifth Circuit precedent on this issue is clear. After the first two stages of administrative review, which in this case would be after the Final Reconsideration Decision, "if a provider is still found to have been overpaid, 'recoupment remains in effect.'" *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 527 (5th Cir. 2020) (citing 42 C.F.R. § 405.379(d)(4), (5)); *see also* 42 U.S.C. § 1395ddd(f)(2)(A). Sonas even agrees with this assertion in its First Amended Complaint (Dkt. #17 at p. 6) ("After the issuance of a Reconsideration decision [by the QIC], the supplier is no longer protected from recoupment."). The Court disposes of Sonas' premature recoupment argument and will only be addressing the excusable neglect and related arguments.

12

applying this standard mainly focus on situations that were out of both the party and counsel's control. However, Sonas does not attempt to argue that its situation constitutes good cause without the inclusion, or rather replacement, of the excusable neglect standard. Therefore, the Court is not persuaded by Sonas' second argument.

### III.     Interests of Justice

Sonas third and final argument is that if the Court cannot apply the Federal Rules of Civil Procedure in this case, it "leaves Plaintiff and others undergoing an administrative action unable to assert claims against an agency" (Dkt. #24 at p. 7). The Court disagrees with that assertion. As the Court has already pointed out, there are various administrative actions that a court can review, such as in *Pioneer*. In those cases, the Court's role is to adjudicate whether the agency acted properly within the rules it must operate under. So, while a federal court may use the Federal Rules of Civil Procedure in excusing a late filing that was made before it, the Federal Rules of Civil Procedure may not substitute an agency's own rules.

The Court also agrees with Becerra's assertion that Federal Rule of Civil Procedure 6 cannot apply in this case. How a deadline is computed at all stages of the five-phase Medicare appeal are already detailed in the regulations, therefore there is no need for Rule 6 to be applied.[3]

The final point made by Sonas is that the Court should find that good cause existed "in the interests of justice." Sonas cites a case out of the Eastern District of California—*Burton v. Jimenez*, No. 2:19-CV-1461, 2021 WL 2660431 (E.D. Cal. June 29, 2021)—for support.

---

[3] Sonas raises an argument that Rule 6 would apply because Becerra has failed to follow the statutory deadline in all stages. The argument specifically refers to the fact that at the beginning of the appeals process, the contractor should have included the specific calculations used to reach the overpayment conclusion. Sonas attempts to argue that because those calculations were sent later, it impacted its ability to challenge the initial order. Arguably, Sonas raises a question that it was not given a final decision until it received the Specific Calculation Notice. However, such a point will not be discussed by the Court because even assuming that the Specific Calculation Notice was the final decision in this case, the sixty-day deadline to appeal still would have been missed. Therefore, in reviewing the agency's decision, the Court need not conduct its analysis outside of the timeliness aspect for this point.

However, the Court fails to see how the *Burton* case applies to Sonas' situation, and it declines to extend the ruling past its limited purpose.

In *Burton*, a state prisoner filed an action under 42 U.S.C. § 1983. The prisoner was sent a notice that he—through an attorney—had fourteen days to respond to the magistrate judge, where he had to elect to proceed on his viable claims or file an amended complaint. *Id.* at *1. The prisoner was informed that if he did not respond, it would result in a recommendation that his claims be dismissed. Receiving no response in the fourteen-day period, the magistrate judge issued a recommendation that his claims be dismissed. *Id.* The prisoner's attorney finally intervened after the recommendation was issued. The prisoner specifically requested that the district court judge extend his deadline under Federal Rule of Civil Procedure 6(b)(1)(B), specifically following a finding of excusable neglect. *Id.* The district court judge ultimately found that the attorney's actions did not constitute excusable neglect, however, "the interest of justice warrant the court's review of plaintiff's late-filed notice on how to proceed." *Id.* at *3. The district court judge reasoned that the "plaintiff should not lose his opportunity due to [his attorney]'s inexcusable mistake." *Id.*

The Court will begin by pointing out the procedural differences between the *Burton* case and the pending matter, as the district court judge in *Burton* was simply choosing to extend a deadline that was set by another federal judge. Here, Sonas is alleging harm based on a regulatory deadline that came from an agency. Additionally, the court in *Burton* also conducted an analysis to find if there was excusable neglect, and it was only upon a finding that was not the case, did it apply this equitable rule. Here, the Court may not and will not conduct an analysis regarding whether Sonas' case fails to meet the excusable neglect standard. The *Burton* decision does not stand for the proposition that the Court may use this "interest of justice" standard when reviewing

an agency action, and it especially does not allow the Court to do so when there is no specific language in the applicable regulations or statutes. The "interest of justice" is simply another standard that Sonas asks the Court to impose on the Medicare statutes and regulations, as it has been used in other rules. *See Pioneer*, 507 U.S. at 389 n.4 (discussing Rule 3002 of the Federal Rules of Bankruptcy Procedure, which describes a time where a late filing may be accepted "in the interest of justice"). The Court will also point out that in numerous contexts, courts have held that clients must be held accountable for the acts and omission of their attorneys. *Id.* at 396. Accordingly, it will not extend the holding in *Burton* and will not find for Sonas in the "interests of justice." The Court only reiterates the same conclusion that it has repeated numerous times—it does not have the authority to fulfill Sonas' request.

Sonas' claims arise before the Court for a single reason—it failed to file its request in a timely manner. "Congress devised an intricate procedure for medical [suppliers] to dispute Medicare recoupment: four layers of administrative review, followed by review in a federal court." *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 525 (5th Cir. 2020). However, that review in a federal court is limited, and Sonas' request asks the federal court to take on Becerra's role and promulgate a new rule with a new standard when one already exists. The Court declines to do so in this case, as it will not intervene in the already extensive administrative scheme that exists for Medicare appeals simply because a party cannot satisfy the standards that already exist. Therefore, all of Sonas' claims fail to state a claim and the entire action will be dismissed.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss Amended Complaint (Dkt. #21) will be **GRANTED.** All of Sonas Medical Supply, Inc.'s pending claims against Xavier Becerra are hereby **DISMISSED with prejudice.** **The Clerk's office is directed to close the case.**

    IT IS SO ORDERED.

    SIGNED this 20th day of April, 2023.

 

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE